United States District Court
Southern District of Texas
**ENTERED**
November 14, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TEXAS LONE STAR PETROLEUM | § | |
| CORPORATION, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-331 |
| | § | |
| CHESAPEAKE OPERATING INC; nka | § | |
| CHESSAPEAKE OPERATING LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On April 29, 2016, this case involving claims and counterclaims regarding the calculation and payment of oil and gas royalties was tried to the bench.  Plaintiffs are Texas Lone Star Petroleum Corporation (Texas Lone Star) and Jeffrey D. Cobbs (J.D. Cobbs), primarily asking for specific performance of obligations to produce geological data and seismic information regarding the leases on which they own an overriding royalty interest.[1] Defendants are Chesapeake Exploration, LLC (Chesapeake Exploration) and Chesapeake Operating, Inc. (Chesapeake Operating), primarily asking for recovery of amounts overpaid as a result of mistakes in determining the percentage of royalties due.   The parties have filed proposed findings of fact and conclusions of law.   D.E. 80, 81, 82, 83.   After due consideration, the Court reviews the claims and enters its findings of fact and conclusions of law as follows:

---

[1] Plaintiffs' claim for recovery of the amount deducted from their royalties for post-production expenses was disposed of prior to trial.

## I.  Jurisdiction, Venue, and Choice of Law

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  Venue is proper in this Court because this action involves oil and gas interests located within this District and Division.  28 U.S.C. § 1391.

3.  Except where otherwise noted, Texas law is to be applied in this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## II.  Determination of Royalty Interests and Declaratory Relief

4.  Pursuant to a Partial Assignment of Oil, Gas and Mineral Leases with Reservation of Overriding Royalty Interest and Reversionary Rights (PAA), dated January 22, 2010, and recorded at Vol. 491, page 301 of the real property records of LaSalle County, Texas, Plaintiff Texas Lone Star Petroleum Corporation (Texas Lone Star) assigned its interest in a number of oil, gas and mineral leases located in La Salle County, Texas to Empresa Energy, LLC (Empresa).

5.  The leases subject to the PAA are referred to as the Original Leases and are those granted by the following seven grantors:

> A. Jerry L. House, Jerome E. Hoelscher, Tony Hoelscher, and Larry R. Hoelscher (the House Lease), recorded at Vol. 450, page 209 of the Deed Records of LaSalle County, Texas;
>
> B. Katherine Fiedler, Agent and Attorney in Fact for Leander B. Fiedler (the Fiedler Lease), recorded at Vol. 479, page 406 of the Deed Records of LaSalle County, Texas;

2

   C. Cynthia A. Chan, Independent Administrator of the Estate of Herbert H. Fiedler, Jr., Deceased (the Chan Lease), recorded at Vol. 481, page 164 of the Deed Records of LaSalle County, Texas;

   D. Jay Blackwell Albright, recorded at Vol. 480, page 503 of the Deed Records of LaSalle County, Texas;

   E. Jeffrey Adam Bourgeois, Agent and Attorney in Fact for Nancy J. Bourgeois, recorded at Vol. 473, page 53 of the Deed Records of LaSalle County, Texas;

   F. Karen Troendel, Successor Trustee Marguerite E. Jansing Boeselt Living Trust, recorded at Vol. 473, page 56 of the Deed Records of LaSalle County, Texas;

   G. Arthur J. Beach and William L. Beach Co-Trustees of the Beach Family Trust, recorded at Vol. 473, page 60 of the Deed Records of LaSalle County, Texas.

6.    In the PAA, Texas Lone Star reserved an overriding royalty interest in the assigned leases "equal to the positive difference between (i) the aggregate of the royalties and overriding royalties burdening such lease as of the Effective Date (defined as January 6, 2010) and (ii) Twenty-Five percent (25%)."

7.    The PAA provides that the terms and conditions expressed therein are to be binding upon any future assignees of Empresa.

8.    On or about May 4, 2010, Texas Lone Star assigned to J.D. Cobbs its overriding royalty interest of .0525 of 8/8ths in the Fiedler and Chan Leases.  On the same date, J.D. Cobbs recorded that assignment at Vol. 501, page 368 of the real property records of LaSalle County, Texas.

9.    On May 4, 2010, Texas Lone Star assigned to Robert Reed a one percent (1%) of 8/8ths overriding royalty interest in the Fiedler and Chan Leases.

3

10.    On May 11, 2010, Robert Reed recorded the assignment of the overriding royalty interest to him at Vol. 501, page 262 of the real property records of La Salle County, Texas.

11.    Pursuant to two Assignments of Interests in Oil and Gas Leases and Properties, both effective as of June 1, 2010, Empresa assigned to Chesapeake Exploration its interests in eight leases Empresa had acquired from Texas Lone Star.

12.    Pursuant to a January 1, 2011 Joint Operating Agreement ratified by the working interest owners in the units on October 19, 2012 and December 14, 2012, Chesapeake Operating became the operator for two pooled units involving the parties' respective lease interests.

13.    Pursuant to the Joint Operating Agreement, Chesapeake Operating, as operator of the two pooled units and on behalf of Chesapeake Exploration, is responsible for the payments made to all interest holders of the units from the sale of oil and gas produced from the units.

14.    By mid-July 2011, all of the leases that were assigned to Chesapeake Exploration by Empresa, except the House, Fiedler, and Chan Leases, had expired.

15.    In 2011, within one year after the expiration of the respective lease terms, Chesapeake Exploration acquired 23 new oil and gas leases.  Included in those acquisitions were the following eight leases referred to as the 2011 B-Tract Leases:

   A. Jeffrey A. Bourgeois, Agent and Attorney in Fact for Nancy Bourgeois (Plaintiffs' Exhibit 5);

   B. Beach Family Trust (Plaintiffs' Exhibit 6);

   C. Jay Blackwell Albright (Plaintiffs' Exhibit 7);

   D. Trisha Jayne Talley Cooke, Independent Executrix of the Estate of Barbara Boeselt Talley (Plaintiffs' Exhibit 8)

4

     E.  Karen Troendle (Plaintiffs' Exhibit 9);

     F.  Patricia A. Jansing (the Jansing Lease) (Plaintiffs' Exhibit 10);

     G.  Patricia Perkins (Plaintiffs' Exhibit 11); and

     H.  Bernard Boeselt (Plaintiffs' Exhibit 12).

16.    The other fifteen 2011 leases acquired by Chesapeake Exploration, but in which Texas Lone Star did not own an overriding royalty interest, are referred to as the "A-Tract Leases."

17.    The PAA provides that if any Original Lease is either renewed or a new lease is executed within one year after its expiration by either Empresa or its assigns, the revised or new lease is subject to the terms and conditions of the PAA.

18.    By a Declaration of Pooled Unit, effective as of January 13, 2012, Chesapeake Exploration formed a 488.19-acre pooled unit known as the Broken Arrow Ranch Unit D LAS 5H.

19.    The Broken Arrow Ranch Unit D LAS 5H included lands covered by the unexpired House, Fiedler, and Chan Leases that Chesapeake Exploration had acquired from Empresa, the B-Tract Leases, and the A-Tract Leases and another lease that was not burdened by Plaintiffs' overriding royalty interest.

20.    In February, 2012, J.D. Cobbs negotiated with a number of the lessors on the mineral leases in order to obtain their cooperation with the pooling of mineral interests in the Broken Arrow Ranch drilling plan.  As part of that effort, he sought an assignment of a 5% overriding royalty interest from Chesapeake Exploration to Texas Lone Star on the Jansing Lease so that Texas Lone Star could, in turn, assign a 1% overriding royalty on that lease to

Mr. House.  Plaintiffs' Exhibit 37.  These negotiations were shared with Jeff Brown, District Landman for Chesapeake Energy Corporation (not a party to this case).

21.    J.D. Cobbs believed that Jeff Brown was keeping Chesapeake Exploration and Chesapeake Operating in the loop on his negotiations.  Defendants did not offer any evidence to controvert this evidence that Jeff Brown kept them in the loop regarding planned assignments of overriding royalty interests.

22.    On February 29, 2012, Northwest Energy, Inc. recorded an Assignment of Overriding Royalty Interest dated April 18, 2006, by which Texas Lone Star assigned to Northwest Energy, Inc. as an overriding royalty interest an undivided 1.25% of 8/8ths of all oil, gas, and minerals produced from the House lease.  That assignment is recorded at Vol. 590, page 408 of the real property records of La Salle County, Texas.

23.    By a Declaration of Pooled Unit, effective as of February 29, 2012, Chesapeake Exploration formed the 484.66-acre Broken Arrow Ranch Unit C LAS 2H.

24.    The Broken Arrow Ranch Unit C LAS 2H included lands covered by the unexpired Fiedler and Chan Leases that Chesapeake Exploration had acquired from Empresa, the B-Tract leases, and the A-Tract Leases and another lease that was not burdened by Plaintiffs' overriding royalty interest.

25.    By a March 8, 2012 Assignment of Overriding Royalty Interest, Chesapeake Exploration assigned to Texas Lone Star an overriding royalty interest of 5.0% of 8/8ths in the 2011 B-Tract Leases, which included the Jansing Lease.

26.    The March 8, 2012 assignment makes the 2011 B-Tract Leases subject to the provisions of the PAA.

27.     Chesapeake Operating, L.L.C. drilled the Broken Arrow Ranch Unit C LAS 2H well and completed it on May 9, 2012.

28.     Chesapeake Operating drilled the Broken Arrow Ranch Unit D LAS 5H well and completed it on May 17, 2012.

29.     By a December 17, 2012 Partial Transfer of Overriding Royalty Interest, J.D. Cobbs assigned to Jerry House a one percent overriding royalty interest in the Fiedler and Chan Leases, consistent with the negotiations described in a February 15, 2012 email to Jerry Stone, on which Jeff Brown was copied.  Plaintiff's Exhibit 37.

30.     By a December 17, 2012 Partial Transfer of Overriding Royalty Interest, Texas Lone Star assigned to Jerry House a three percent overriding royalty interest in the House Lease.

31.     By a December 17, 2012 Partial Transfer of Overriding Royalty Interest, Texas Lone Star assigned to Jerry House a one percent overriding royalty interest in the B-Tract Leases.

32.     By a March 2013 Assignment, Chesapeake Exploration assigned to Texas Lone Star a 5% overriding royalty interest in the eight B-Tract Leases.

33.     By a September 1, 2013 Transfer of Overriding Royalty Interest, Texas Lone Star assigned to J.D. Cobbs all of its remaining overriding royalty interest in all the leases in issue.  The Transfer was recorded on September 23, 2013, in the real property records of LaSalle County, Texas at Vol. 737, page 346.  Thus, Texas Lone Star no longer owns any overriding royalty interest in the leases included in the units in question.

34.     From the date of first sales of oil and gas produced from the Broken Arrow Ranch Unit C LAS 2H, the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit C LAS 2H were owned as follows:

| Katherine Fiedler & Cynthia Chan Leases (6.25% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 4.25% |
| | Robert Reed | 1.00% |
| | Jerry House | <u>1.00%</u> |
| | | 6.25% |
| 2011 A-Tract Leases (0% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>0.00%</u> |
| | | 0.00% |
| 2011 B-Tract Leases (5% ORRI) | TLSPC | 4.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>1.00%</u> |
| | | 5.00% |

35.     Effective September 2013, the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit C LAS 2H were owned as follows:

| Katherine Fiedler & Cynthia Chan Leases (6.25% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 4.25% |
| | Robert Reed | 1.00% |
| | Jerry House | <u>1.00%</u> |
| | | 6.25% |
| 2011 A-Tract Leases (0% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>0.00%</u> |
| | | 0.00% |

8

| 2011 B-Tract Leases | TLSPC | 0.00% |
| (5% ORRI) | J.D. Cobbs | 4.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>1.00%</u> |
| | | 5.00% |

36.    From the date of first sales of oil and gas produced from the Broken Arrow Ranch Unit D LAS 5H, the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit D LAS 5H were owned as follows:

| Katherine Fiedler & Cynthia Chan | TLSPC | 0.00% |
| Leases (6.25% ORRI) | J.D. Cobbs | 4.25% |
| | Robert Reed | 1.00% |
| | Jerry House | <u>1.00%</u> |
| | | 6.25% |

| 2011 A-Tract Leases | TLSPC | 0.00% |
| (0% ORRI) | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>0.00%</u> |
| | | 0.00% |

| 2011 B-Tract Leases | TLSPC | 4.00% |
| (5% ORRI) | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>1.00%</u> |
| | | 5.00% |

| Jerry House Lease | TLSPC | 2.00% |
| (6.25% ORRI) | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 3.00% |
| | Northwest Energy | <u>1.25%</u> |
| | | 6.25% |

37.    Effective September 2013, the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit D LAS 5H were owned as follows:

9

| | | |
|---|---|---|
| Katherine Fiedler & Cynthia Chan | TLSPC | 0.00% |
| Leases (6.25% ORRI) | J.D. Cobbs | 4.25% |
| | Robert Reed | 1.00% |
| | Jerry House | <u>1.00%</u> |
| | | 6.25% |
| | | |
| 2011 A-Tract Leases | TLSPC | 0.00% |
| (0% ORRI) | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>0.00%</u> |
| | | 0.00% |
| | | |
| 2011 B-Tract Leases | TLSPC | 0.00% |
| (5% ORRI) | J.D. Cobbs | 4.00% |
| | Robert Reed | 0.00% |
| | Jerry House | <u>1.00%</u> |
| | | 5.00% |
| | | |
| Jerry House Lease | TLSPC | 0.00% |
| (6.25% ORRI) | J.D. Cobbs | 2.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 3.00% |
| | Northwest Energy | <u>1.25%</u> |
| | | 6.25% |

38.     Plaintiffs did not dispute the foregoing facts regarding the record ownership of the leases, assignments, and resulting allocation of overriding royalty interests and there was no contrary evidence.

39.     Chesapeake Operating and Chesapeake Exploration are entitled to declaratory judgment relief declaring the correct ownership of the overriding royalty interests in the leases as set out above.  Defendants' request for a declaratory judgment is GRANTED.

### III.   Plaintiffs' Claim for Post-Production Expenses

40.     On April 15, 2016, the Court granted in part Defendants' motion for partial summary judgment (D.E. 56), holding that the parties' rights under the PAA are governed by

the terms of the Original Leases listed in its Exhibit A (D.E. 56-1, pp. 15-18).  As a result, the royalties due are calculated at the mouth of the well with respect to all leases, including those that were obtained as renewal leases or new leases included in the terms of the PAA.

41.     The parties have agreed that, where royalties are calculated at the mouth of the well, Defendants are permitted to deduct post-production expenses, including processing and marketing costs.

42.     Texas Lone Star and J.D. Cobbs are not entitled to recover the amount of post-production expenses deducted from the respective overriding royalty interest payments made or due to them and their claim for that recovery is DENIED.

## IV.     Chesapeake's Claims for Overpayment

### A.   Incorrect Payments

43.     Chesapeake Operating began paying Texas Lone Star and J.D. Cobbs on production from both wells on February 21, 2013.

44.     Payment ordinarily follows approximately two months after the minerals are produced and sold.

#### i.   Incorrect Percentage Interests on Unit C LAS 2H

45.     From the date of first sales of oil and gas produced from the Broken Arrow Ranch Unit C LAS 2H, Chesapeake Operating, on behalf of Chesapeake Exploration, paid the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit C LAS 2H as follows:

| Katherine Fiedler & Cynthia Chan Leases (6.25% ORRI) | TLSPC | 5.000% |
| | J.D. Cobbs | 0.525% |
| | Robert Reed | 0.100% |
| | Jerry House | <u>0.000%</u> |
| | | 5.625% |
| 2011 A-Tract Leases (0% ORRI) | TLSPC | 5.000% |
| | J.D. Cobbs | 0.525% |
| | Robert Reed | 0.100% |
| | Jerry House | <u>0.000%</u> |
| | | 5.625% |
| 2011 B-Tract Leases (5% ORRI) | TLSPC | 5.00% |
| | J.D. Cobbs | 3.40% |
| | Robert Reed | 0.85% |
| | Jerry House | <u>0.00%</u> |
| | | 9.25% |

46.     Effective September 2013 production, Chesapeake Operating, on behalf of Chesapeake Exploration, paid the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit C LAS 2H as follows:

| Katherine Fiedler & Cynthia Chan Leases (6.25% ORRI) | TLSPC | 0.000% |
| | J.D. Cobbs | 5.525% |
| | Robert Reed | 0.100% |
| | Jerry House | <u>0.000%</u> |
| | | 5.625% |
| 2011 A-Tract Leases (0% ORRI) | TLSPC | 0.000% |
| | J.D. Cobbs | 5.525% |
| | Robert Reed | 0.100% |
| | Jerry House | <u>0.000%</u> |
| | | 5.625% |
| 2011 B-Tract Leases (5% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 8.40% |
| | Robert Reed | 0.85% |
| | Jerry House | <u>0.00%</u> |
| | | 9.25% |

47.     Chesapeake Operating, on behalf of Chesapeake Exploration, has overpaid Texas Lone Star $262,324.70 in overriding royalty payments on oil and gas produced from the Broken Arrow Ranch Unit C LAS 2H since February 21, 2013.

48.     Chesapeake Operating, on behalf of Chesapeake Exploration, has underpaid J.D. Cobbs $101,399.42 in overriding royalty payments on oil and gas produced from the Broken Arrow Ranch Unit C LAS 2H since February 21, 2013.

49.     Texas Lone Star and J.D. Cobbs did not dispute the amounts of these overpayments and underpayments other than with respect to the deduction of post-production expenses, addressed above.

### ii. Incorrect Percentage Interests on Unit D LAS 5H

50.     From the date of first sales of oil and gas produced from the Broken Arrow Ranch Unit D LAS 5H, Chesapeake Operating, on behalf of Chesapeake Exploration paid the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit D LAS 5H as follows:

| | | |
|---|---|---|
| Katherine Fiedler & Cynthia Chan | TLSPC | 0.00% |
| Leases (6.25% ORRI) | J.D. Cobbs | 5.25% |
| | Robert Reed | 1.00% |
| | Jerry House | 0.00% |
| | | 6.25% |
| | | |
| 2011 A-Tract Leases | TLSPC | 0.00% |
| (0% ORRI) | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | | 0.00% |

| | | |
|---|---|---|
| 2011 B-Tract Leases<br>(5% ORRI) | TLSPC | 5.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | | 5.00% |
| | | |
| Jerry House Lease<br>(6.25% ORRI) | TLSPC | 6.25% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | Northwest Energy | 0.00% |
| | | 6.25% |

51.     Effective September 2013 production, Chesapeake Operating, on behalf of Chesapeake Exploration, paid the overriding royalty interests in the oil and gas leases included in the Broken Arrow Ranch Unit D LAS 5H as follows:

| | | |
|---|---|---|
| Katherine Fiedler & Cynthia Chan<br>Leases (6.25% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 5.25% |
| | Robert Reed | 1.00% |
| | Jerry House | 0.00% |
| | | 6.25% |
| | | |
| 2011 A-Tract Leases<br>(0% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | | 0.00% |
| | | |
| 2011 B-Tract Leases<br>(5% ORRI) | TLSPC | 5.00% |
| | J.D. Cobbs | 0.00% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | | 5.00% |
| | | |
| Jerry House Lease<br>(6.25% ORRI) | TLSPC | 0.00% |
| | J.D. Cobbs | 6.25% |
| | Robert Reed | 0.00% |
| | Jerry House | 0.00% |
| | Northwest Energy | 0.00% |
| | | 6.25% |

14

52.     Chesapeake Operating, on behalf of Chesapeake Exploration, has overpaid Texas Lone Star $97,677.46 in overriding royalty payments on oil and gas produced from the Broken Arrow Ranch Unit D LAS 5H since February 21, 2013.

53.     Chesapeake Operating, on behalf of Chesapeake Exploration, has overpaid J.D. Cobbs $91,741.43 in overriding royalty payments on oil and gas produced from the Broken Arrow Ranch Unit D LAS 5H since February 21, 2013.

54.     Texas Lone Star and J.D. Cobbs did not dispute the amounts of these overpayments and underpayments other than with respect to the deduction of post-production expenses, addressed above.

55.     The Court takes UNDER ADVISEMENT Defendants' request to recover overpayments for further calculations, as noted below.

### B.   Division Orders

56.     Chesapeake Operating, on behalf of Chesapeake Exploration, issued the erroneous payments for production on the Broken Arrow Ranch Unit C LAS 2H to Texas Lone Star and J.D. Cobbs based upon, and consistent with the percentage interests claimed in, division orders that Plaintiffs executed prior to payment.

57.     Chesapeake Operating, on behalf of Chesapeake Exploration, issued the erroneous payments for production on the Broken Arrow Ranch Unit D LAS 5H to J.D. Cobbs based upon, and consistent with the percentage interests claimed in, division orders that he executed prior to payment.

58.     Texas Lone Star did not execute any division orders with respect to payments that Chesapeake Operating, on behalf of Chesapeake Exploration, made to it for production on the Broken Arrow Ranch Unit D LAS 5H.

59.     Chesapeake Operating, on behalf of Chesapeake Exploration, prepared the pay deck and division orders for the payment of overriding royalty interests on the Broken Arrow Ranch Unit C LAS 2H and Unit D LAS 5H wells and is responsible for the errors in those division orders.

60.     J.D. Cobbs, who signed division orders on his own behalf and on behalf of Texas Lone Star, did not have sufficient information to verify the decimal interests assigned to Plaintiffs in the division orders.  To do so, he would need a division order title opinion or a survey of the leased lands included in the respective pooled units.

61.     J.D. Cobbs requested additional information from Chesapeake Operating in order to better understand the division order calculations, but Chesapeake Operating did not provide him with any such information.

62.     J.D. Cobbs signed the division orders as a courtesy to Chesapeake Operating to expedite overdue payments.

63.     Several division orders signed by J.D. Cobbs on his own behalf and on behalf of Texas Lone Star reflected incorrect overriding royalty interest ownerships.

64.     Defendants admitted to having made mathematical errors in addition to assigning incorrect percentages of overriding royalty interests to those who were paid overriding royalty interests on the Unit C LAS 2H and Unit D LAS 5H wells.  The incorrect mathematical calculations applied to the decimal interests on which Plaintiffs were paid.

16

65.     Chesapeake Operating and Chesapeake Exploration pled a claim entitled "Recovery of Overpayments under Division Orders," but did not specify a particular legal theory to support the claim.

66.     The division orders, in addition to setting out the percentage or decimal interest owned by the signatory, provide:

> PAYMENT: Payee agrees to refund to payor any amounts attributable to an interest or part of an interest that payee does not own.

> INDEMNITY: The owner agrees to indemnify and hold payor harmless from all liability resulting from payments made to the owner in accordance with such division of interest, including but not limited to attorney fees or judgments in connection with any suit that affects the owner's interest to which payor is made a party.

67.     These provisions in the division orders are consistent with those permitted by Texas Natural Resources Code § 91.402(c)(1)(C), allowing "an agreement to indemnify the payor and reimburse the payor for payments made if the payee does not have merchantable title to the production sold[.]"

68.     Division orders are treated as contracts until revoked.  *See generally, Chicago Corp. v. Wall*, 293 S.W.2d 844, 846 (1956).

69.     While Plaintiffs claim that the division orders cannot be enforced as contracts because of a failure of consideration, J.D. Cobbs's testimony that he signed the division orders to expedite overdue payments supplies some supporting consideration.

70.     Plaintiffs point out that enforcement of the refund and indemnity provisions in the division orders pursuant to the Texas Natural Resources Code is waived by the provisions of Section XIII of the PAA, which states:

>   A. "It shall not be necessary for Assignor to execute any division or transfer order in order to be entitled to payment of overriding royalties due under this assignment."
>
>   B. "Assignee and any purchaser of oil or gas produced from the lands covered by the Subject Leases hereby waives the provisions of Section 91.402(c)(1) of the Texas Natural Resources Code which entitle a payee of royalties or overriding royalties to require a signed division order as a condition to payment."
>
>   C. "No instrument executed by Assignor shall be effective to constitute a ratification, renewal, extension or amendment of this Assignment unless the instrument is clearly titled to indicate its purpose and intent."

71.     The division orders are not clearly titled to indicate an amendment of the PAA. "In Texas, division and transfer orders do not convey royalty interests; they do not rewrite or supplant leases or deeds." *Gavenda v. Strata Energy, Inc*., 705 S.W.2d 690, 691 (Tex. 1986).

72.     Yet the provisions of PAA Section XIII only prohibit the assignee from requiring a division order prior to issuing payment.  It does not eliminate the force and effect of a division order if the overriding royalty interest owner chooses to execute a division order when requested to do so.

73.     There is no evidence in the record that Defendants refused to pay the royalties unless Plaintiffs signed the division orders.

74.     J.D. Cobbs did not refuse to sign the division orders.  J.D. Cobbs did not invoke Plaintiffs' rights under PAA Section XIII until after he signed the division orders and accepted payments from Defendants based upon the division orders.

75.     Chesapeake Operating, on behalf of Chesapeake Exploration, paid sums representing overriding royalties to J.D. Cobbs on production from the Broken Arrow Ranch Unit D LAS 5H from December 13, 2013 to December 22, 2015, pursuant to one or more division orders that provided for refund of overpayments and indemnity.  Defendants' Exhibit 45, 46, 49.

76.     The division orders on J.D. Cobbs's interest in the Broken Arrow Ranch Unit D LAS 5H were effectively revoked on December 22, 2015, by Defendants' filing of their motion for leave to file second amended counterclaim seeking refund of overpayments on that well. D.E. 40.

77.     Chesapeake Operating, on behalf of Chesapeake Exploration, paid sums representing overriding royalties to Texas Lone Star and J.D. Cobbs on production from the Broken Arrow Ranch Unit C LAS 2H from September 3, 2012 to May 29, 2015, pursuant to one or more division orders providing for refund of overpayments and indemnity.  Defendants' Exhibit 48, 49.

78.     The division orders on J.D. Cobbs and Texas Lone Star's respective interests in the Broken Arrow Ranch Unit C LAS 2H were effectively revoked on May 29, 2015, by Defendants' filing of their original counterclaim seeking refund of overpayments on that well. D.E. 24.

79.     Defendants may recover from Plaintiffs any overpayments attributable to payments made for production that took place during the time periods in which the division orders were in effect, as set out above.

80.     Defendants are ORDERED to file with the Court, on or before seven (7) days from the date of this Order, an accounting of the amount of overpayments made during the time period in which the division orders were in effect, as found above.   Plaintiffs are ORDERED to file with the Court, on or before seven (7) days from the date Defendants file their accounting, any response or objections they may have to Defendants' accounting.

### C.  Money Had and Received

#### i.  The Claim

81.     In Texas, a plaintiff may recover under a claim for money had and received by showing that it paid money to the defendant by mistake, and that the money in equity or good conscience should be returned to the plaintiff.  *See Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 207 (Tex. 2007) (per curiam).

82.     A claim for money had and received is not premised on wrongdoing, but involves determining to which party, in equity, justice, and law, the money belongs, avoiding unconscionable loss to the payor and unjust enrichment to the payee.  *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162–63 (Tex. 2007) (per curiam); *Bryan v. Citizens Nat'l Bank*, 628 S.W.2d 761, 763 (Tex. 1982).

83.     Texas courts have allowed recovery of overpayments made by virtue of a mistake of fact.  *See Benson v. Travelers Ins. Co*., 464 S.W.2d 709, 712 (Tex. Civ. App.— Dallas 1971, no writ).

84.    Defendants must demonstrate that they have standing to assert the claim for money had and received.

### ii.  Standing

85.    Defendants do not have standing to assert a claim for money had and received.

86.    The treatment afforded division orders under Texas law requires underpaid royalty owners to seek their recovery from overpaid royalty owners through an unjust enrichment action.  The operator is protected from claims on the premise that it has paid out the entirety of the royalty interest to one or more royalty interest owners and should not have double liability.  *Gavenda*, 705 S.W.2d at 692.

87.    If the operator retains an amount that should have been paid to a royalty interest owner, then the underpaid royalty interest owner may recover that amount from the operator. *Id*.

88.    While Defendants submitted evidence that Plaintiffs had been overpaid for their royalty interests, Defendants did not prove that they had paid more in royalties than were due to all of the royalty interest owners at any time prior to their payments to Northwest Energy and Jerry House in November 2015.

89.    Any overpayment of royalties to Plaintiffs was owed in equity, justice, and law to the underpaid royalty interest owners, not to Defendants.  Defendants do not have standing under their own claim for money had and received.

90.    Defendants are not entitled to equitable subrogation to the unjust enrichment claims of Northwest Energy or Jerry House.

91.    In November 2015, Defendants paid to Northwest Energy an amount Defendants claim was overpaid to the Plaintiffs and underpaid to Northwest Energy for the overriding royalty interest that Texas Lone Star assigned to Northwest Energy.

92.    In November 2015, Defendants paid to Jerry House an amount Defendants claim was overpaid to Plaintiffs and underpaid to Jerry House for the overriding royalty interest that Plaintiffs assigned to Jerry House.

93.    Equitable subrogation is a claim that must be pled.  *E.g.*, *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 782 n.2 (Tex. App.--Dallas 1985, writ ref'd n.r.e).

94.    Defendants did not plead equitable subrogation and are therefore not entitled to recover under that theory.

95.    Furthermore, under Texas law,

> The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing.  Texas courts interpret this doctrine liberally.  Although the doctrine most often arises in the insurance context, equitable subrogation applies "in every instance in which one person, ***not acting voluntarily***, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter."  Thus, a party seeking equitable subrogation must show it ***involuntarily paid*** a debt primarily owed by another in a situation that favors equitable relief.

*Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (emphasis added).

96.    Defendants had not retained any amounts that were required to be paid out to royalty interest owners.  Therefore, the payments Defendants made to Northwest Energy and Jerry House to make them whole were made voluntarily.

97.    Defendants paid the amounts to Northwest Energy and Jerry House with full knowledge of the facts and such payments were made in the absence of fraud, deception, duress, or compulsion.

98.    Defendants are not entitled to prosecute the unjust enrichment or money had and received claims previously owned by Northwest Energy and Jerry House because their payments of the amounts owed to Northwest Energy and Jerry House were made voluntarily.

99.    Defendants' claim for money had and received is DENIED.

### D.   Plaintiffs' Request for Geological Data

100.    Plaintiffs have asserted a contractual claim in the nature of specific performance against Defendants under the PAA for geological data and well information, including well logs, daily drilling reports, mud logs, title opinions, and completion reports.  This claim is based upon Section X of the PAA.  D.E. 80, Plaintiffs' Proposed Finding of Fact No. 42.

101.    During the pendency of this action, Defendants agreed to supply Plaintiffs with that information that is within their possession, custody, or control.

102.    Plaintiffs have asserted that Defendants may have certain 1-inch and 2-inch mud logs on the Broken Arrow Ranch Unit D LAS 5H that have not been produced.  However, Defendants have agreed to produce the information if they have it.

103.    Based upon the parties' agreement recited in open court, the Court GRANTS Plaintiffs' claim for geological data and well information consistent with Section X of the PAA.

104.    Plaintiffs' prior assertion of a contractual claim in the nature of specific performance against Defendants under Section III of the PAA for seismic data has been waived

23

by failure to provide findings of fact and conclusions of law supporting that claim.  The claim

for seismic data is DENIED.

105.   Because Plaintiffs have obtained a partial recovery on their specific performance

contract claim, they are entitled to reasonable and necessary attorney's fees pursuant to Tex.

Civ. Prac. & Rem. Code § 38.001(8).

106.   Plaintiffs are ORDERED to submit their motion for attorney's fees, not to exceed

five (5) pages and attaching relevant evidence of time spent and rates chargeable, on or before

seven (7) days from the date of this Order.  Defendants are ORDERED to file their response,

not to exceed five (5) pages and attaching controverting evidence, on or before seven (7) days

after the date Plaintiffs file their motion for such fees.

ORDERED this 14th day of November, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE